Thank you very much. Good morning, your honors. May it please the court. My name is David Sildorf, and I represent the appellant, Mr. Walter Ramirez. Mr. Ramirez's 108-month sentence should be reversed and remanded to the district court for resentencing in this case, as there were a number of procedural deficiencies that occurred at the sentencing that also amounted to a substantively unreasonable sentence. Before we reach those issues, I'd like to address the issue of the limited appellate waiver in this case. Mr. Ramirez retained the right to appeal his sentence as a result of what can best be described as the ambiguous advisals that the district court gave to Mr. Ramirez at the time of sentencing. And as a result, the government failed to object throughout the course of the sentencing hearing. The Ninth Circuit has held repeatedly, starting in United States v. Buchanan, later in Zink, and most recently in United States v. Felix, that where the court gives an advisal to the defendant that he has a right to appeal his sentence and the government fails to object immediately, immediately, that the defendant retains his right and the government essentially waives waiver on that issue. Kagan What was ambiguous about what the court said? Ramirez I'm sorry? Kagan What was ambiguous about what the court said? Ramirez The court did a couple of things. The court first advised Mr. Ramirez that he had a right to appeal his conviction. And I think it's important to note at this point that the judge who took the plea colloquy in this case was not the same judge who took the sentence. And I think that's important to note because the test under Buchanan and the other cases that follow is whether or not the defendant had a reasonable expectation to believe that he maintained his right to appeal. So he had one judge ---- Kagan I think what he told him that however you can waive these rights and you did waive these rights and such waivers are generally enforceable? Ramirez He did go on to say that, yes. But then he went on to say even further, if you believe the waiver is unenforceable, you may present that theory to the court of appeals, essentially saying you have the right to appeal your sentence. Kagan Well, only if he believes it's unenforceable or if he has some reason to think it's unenforceable. Ramirez Which we do. Kagan Which is that I just told you that it's generally enforceable. Ramirez If I understand the Court's question, I think the ambiguity arises from, again, the fact that Mr. Ramirez was told that he had a right to appeal his conviction. We have to assume that Mr. Ramirez is able to understand the difference. And then when he's later advised he has the right to ---- Ginsburg We have a case called Aguilar-Muniz from 1998 where, as I understand it, he said almost exactly the same thing. We said it was okay. Ramirez I'm sorry. I'm not familiar with that case. But what happened here is when the Court said such waivers are generally enforceable, the Court went on to say if you believe it's unenforceable, you can present that theory. Assuming counterfactually here that the Court had simply said, Mr. Ramirez, you entered into a plea agreement waiving your right to appeal your sentence, and you maintained only the right to appeal an unconstitutional sentence, then we would only be dealing with that issue. But that's not what happened. The Court told him that he had the right to appeal his sentence under some circumstances, particularly if he believed it to be contrary to the law. If I ---- Alito That only works if you pretend that the sentence stopped there. If the judge went on to say, as Judge Berzon pointed out, that you can waive that, you vented into a plea agreement which waives some of those rights. How can you just take half of that sentence? Ramirez You can't. I agree that you have to read the whole sentence. But then the Court says that he waived some or all of his rights to appeal the sentence without saying that he maintained the right to appeal an unconstitutional sentence or what exactly it was. Kagan All right. Let me read you what was said in AgriLaw, Muniz. Okay? You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to the law. However, a defendant may waive those rights as part of the plea agreement, and you have entered into a plea agreement which waives some or all of your rights to appeal. Such waivers are generally enforceable. But if you believe the waiver is unenforceable, you can present that theory to the appellate court. And we said that's fine. Now, isn't that the same thing? Ramirez Again, I haven't read the case. I heard what the Court just read to me. I think it is except that when the Court asks if he understands, he doesn't respond as he had at the plea call. Mr. Ramirez had, at the plea call, I have to confess, said that he understood. But here he asks if he understands. Mr. Ramirez doesn't respond. And it's just not clear by the language whether or not Mr. Ramirez understood that this was something different. By way of example, in the Southern District, California, almost universally without exception, at the end of the sentencing hearings, the judge will ask, after imposing sentence, do you understand that you waived the right to appeal in this case? Yes. Does counsel join in the waiver? Yes. And that's it, and really buttons it down. This, I think, leaves room for ambiguity. But moving on, even if the Court is not inclined to — even if the Court does not believe that there is any ambiguity here, Mr. Ramirez did maintain his right to appeal an unconstitutional sentence, which this was. Mr. Ramirez retained that right. It was within the plea agreement. And in order to get to the merits of this case, we have to overcome that hurdle. And it's clear from reading the rest of the sentencing transcript that the Court ignored each of the 3553A factors that were presented by both the defense counsel and the probation officer, both before the sentencing hearing and at sentencing itself. The only factor mitigation, the only request for departure or variance that was dealt with was when the defense counsel attempted to begin to discuss the outstanding military service in the Navy that Mr. Ramirez had and the number of medals and honors that he had received. And the district court's response to that was, don't go there, counsel. I know where you're going, and I'm trying not to hold that against him. That was really the only time that he meaningfully engaged, if you want to call it that, any of the 3553A factors. And under the post-Booker line of cases, under Cardi and Rita and Gall, the Court is under an obligation. It's a fundamental due process right for the Court to engage and address each of those factors, and the Court simply didn't do that in this case. You're saying that Booker says that that's a due process right, or Booker and Gall says that that's a due process right as opposed to something statutory? Correct. Okay. That it – and also I believe that the Supreme Court under Gardner v. Florida, which is also cited too in our briefs, makes this an issue of constitutional concern. What – and this is a question I'm curious about in general and with respect to the next case as well. What is your understanding about our case law and case law generally about appeal waivers with regard to, quote, constitutional issues? What does that mean? Does it mean whenever you raise any constitutional issue, even if a procedure doesn't apply? I think it depends. It's a case-by-case basis. It would have to be analyzed on a case-by-case basis. What am I looking for case-by-case? Well, in this particular case, we're looking for whether or not the judge followed what has been – what the directives have been as they've come down from the Supreme Court and from this circuit. What I'm asking you is when the plea waiver – I mean, there's an understanding of an exception and there's a statute in the plea agreement, an exception, which seems to parallel our general language that says there's an exception for where there's an illegal sentence or an unconstitutional one. Right? Now, the illegal sentence part is generally understood to mean not an illegally arrived at sentence, but a sentence that is illegal, i.e., it's above the statutory maximum or something like that. So the question is – because otherwise you'd swallow the whole waiver, which, you know, has some – I can understand a holding that said that you can't prospectively waive something that hasn't happened yet, but that doesn't seem to be our law. We seem to have something prospectively enforceable. So the question is with regard to constitutional issues, is there a similar limitation, i.e., you can complain about things that have to do with whether the sentence is unconstitutional, i.e., clear and unusual punishment or double jeopardy or something like that, but not the procedure by which the sentence is arrived at? Well, I think that this is a procedural due process concern. I understand that. And the cases make clear that that is a – being a constitutional concern. And you know of a case in which an appellate waiver was not applied because there was a procedural due process argument? As I stand here right now, I don't. Do you know of any case that says even though it's a constitutional violation, it doesn't count because it's a procedural due process? Yeah. I think that the cases direct us to – direct the courts to follow, you know, as, for example, in Cardi where it says that if a party raises a specific non-frivolous request for a variance that is tethered to a relevant 3553A factor, that the court should follow – should at least explain why it chose to either reject it or accept it. But let's – I'm not asking you what is a constitutional violation. I'm saying if it is a constitutional violation, procedural or otherwise, do you know of any case that says that doesn't count because even though it's a constitutional violation, it's not in the sentence itself, but in the process that led to the sentence? Not that I've come across. I see that I've gone over my time and run into my colleague's time here. All right. Thank you. Thank you, Your Honor. Well, I should have kept better track. I'm not sure if the government wants to go to it about that or should I go ahead? No. My name is Vicki Buchanan, and I'm here on behalf of Clint Meltzer. Unlike the previous case, there was an appeal waiver, but in this case, the judge sentenced beyond the 26 points that the parties agreed to that would trigger the appeal waiver. In this particular case, Mr. Meltzer was one of the first people to plead guilty in this very large case, and he – the court prepared – asked for a pre-sentence report, and that came up with his – with his criminal history record. And accordingly, when they entered into the plea agreement, the plea, based on the 26 points, was in the range of 92 to 115 months. Later, at the time of sentencing, which was before a different judge, probation recommended 104 months. The government asked for 115 months, and the court signaled at the beginning of the recommendations and was going to go above the sentencing level. And he indicated the reasons he was going to do that was because the victim died. The underlying – the underlying incident that triggered the points to begin with was manslaughter, voluntary manslaughter. So at any rate, he said because the victim died, because Mr. Meltzer had a prior violent confrontation, and because he had committed this offense while on parole. All of those circumstances were taken into account with the original – with the original 26 points. After the – He also talked about depraved indifference or something of that effect, didn't he? He did. So that's not taken into account in the underlying guidelines. But there's no factual basis for what he said. In fact, if you look at what the judge did in sentencing after he signaled what he was going to do and listened to argument, he went ahead and he took verbatim the recommendation from the probation office, from the recommendation letter. He took verbatim every single thing in the recommendation except where the probation officer talks about the fact that voluntary manslaughter probably is not sufficient to raise this out of the sentencing guidelines, and also says that there is almost no information on what triggered this event, this beating that took place in the bar in Lancaster. In fact, the judge himself says at the end of the sentencing hearing, the circumstances of this case are indeed sparse. And yet he used that to go over 22 months above and beyond the highest level that was recommended by the probation department or that the parties agreed to. So I believe that this is an unreasonable sentence. It is clearly taken into account with the – with the guidelines. This is a – there's nothing that we know about that takes this out of the ordinary voluntary manslaughter case. As the probation officer said, we don't know what the events were leading up to the circumstances. We don't know what threats were made. We don't know whether there had been previous altercations. We don't know anything to know whether this is above and beyond a normal voluntary manslaughter case. So unless the Court has any further questions, I submit this is an abuse of discretion and the sentence is unreasonable. Thank you, Your Honor. Good morning, Your Honors. My name is David McClain. May it please the Court, I represent David Rivera, the appellant in this case. I'd like to reserve one minute for rebuttal out of the seven minutes that I have, Your Honor. Basically, this is a case where Mr. Rivera – this whole case involved a Mongol racketeering conspiracy. There were about 80 defendants. My client was – out of the 80 defendants, there were only five individuals who were not Mongols. My client was one of the five. He was not even charged in the RICO racketeering count. He was charged only with possession with intent to distribute drugs, and he was also charged in the drug conspiracy count. We reached a disposition with the government because he was facing a mandatory minimum sentence of 10 years. We reached a disposition where he would only plead to possession with intent to distribute. So he pled to an offense that didn't involve admitting that he was a Mongol because he wasn't a Mongol. But out of all these defendants, Mr. Rivera received one of the lengthiest sentences of all the defendants. In fact, when I looked at the state of the record in this case, I submitted a sentencing charge as part of my excerpts of record, something that the court totally didn't even consider at the sentencing. But there were seven defendants who received lengthier sentences, and most of those drug trafficking activities as leaders and members of the Mongols. My client was only involved in this conspiracy because his brother, an admitted Mongol, asked him to drive a car that happened to have a pound of methamphetamine. It was clear at the sentencing, Your Honors, that my client didn't initiate the transaction, didn't know about the amount of drugs in the car, yet he received one of the lengthiest sentences. I have two questions. One is, are you going to address the public trial question? Yes. And second, related to that, is how would we reach this question given the appeal waiver? Okay. Your Honor, first of all, the appeal waiver doesn't involve a waiver of constitutional issues. All right. So I understand that about the public trial, but I don't understand about the argument you just made. Because under Townsend v. Burke, it says that if a court engages in material, inaccurate fact-binding that's material to the sentencing, that rises to the level of a constitutional due process issue. I'm not talking about the procedure in which the sentence is set. I'm not arguing how the guidelines were applied. I'm not talking about objective unreasonableness. In my brief, I make it very clear that I am arguing that there was a constitutional material false fact-binding by the district court. The district court found that my client initiated the drug transaction when even government counsel at the sentencing said my client was not the initiator of the drug transaction, that my client played a very limited role. But the court was fixated on it, and I've cited to the record in that, Your Honors. And therefore, the Supreme Court has held, and it's been followed in the Ninth Circuit. I've cited a couple cases that says there's a small exception to generally appellate waivers concerning how procedurally a sentence is imposed. But when it goes to the heart of the case as whether my client was a main, was involved heavily in drug trafficking, which he wasn't, that was one false fact-binding that the district court was engaged in. And the other one was that he initiated the drug transaction. That's another matter of false fact-binding. And therefore, he received one of the highest sentences out of all the Mongols. Now, as far as the public hearing, Your Honor, clearly that constitutional issue was not waived at all. Mr. Rivera, at the sentencing, we had sealed the courtroom except for family because he cooperated in the case. So family was allowed. The court said, well, I don't really like it, but I'll allow the family to stay. But then as the sentencing went on, Your Honors, it became apparent that this was very upsetting to the court. In fact, I cite to the record where he says that I was engaged in manipulation of the court by just having his wife and seven-year-old child there. And in fact, the judge was so upset at the end of the first sentencing proceeding, he said he couldn't go forward in good conscience with the sentencing because he felt it was a charade. He felt I was manipulating the court. He felt the family was manipulating the court. So we reconvened the sentencing without his family there. Now, the case law is clear. In re Oliver, Waller, Sherlock, there has to be a substantial reason to exclude a family from a major proceeding in a trial. And the fact of the matter, Your Honors, is that 95 to almost all cases are conducted by way of plea bargains and sentencing. There can be no more critical proceeding in a criminal trial than sentencing, yet this district court excluded his wife and child from the sentencing. It was very disappointing to my client. It was very severely disappointing to his family. They felt, why is the judge attacking us? Did we do something wrong? Why are we excluded from this proceeding? And it just didn't feel right, Your Honors. If we're going to have sentencings and we're going to impose these types of sentences on individuals, 97 months as it occurred in this case, an individual should have his family there unless there's a substantial reason. And the fact that the district court clearly on the record said you're manipulating me, that cannot be a substantial reason. There are cases that talk about, well, during trial in front of a jury, if you have the defendant and his wife and child, and I think there was one case the government cited, too, that talked about, well, the court was in its rights to exclude the child because there was a fear about manipulating the jury. But when we're talking about a judge, the judge should be able to put aside those feelings of feeling that he's manipulated and be able to sentence fairly. That is not a substantial reason. That cannot be the case law. In fact, this judge at this sentencing said, Your Honors, he said, didn't you get the word out that I don't want families here at sentencing? I said children is what he actually said. Well, he said family. It was ambiguous. But at the end of that proceeding, Your Honor, he said, okay, I can't go forward. And I said, well, so my understanding of it is he didn't want the entire family. So I said to the court at the end of the sentencing, it's in the record, so no family. And he said, no family. Yes. Okay. So we show up at the next hearing. I put on the record that I just have my investigator there. And the judge says, that's the way I like it. I like a cleared courtroom. So it wasn't just his child, Your Honor. It was the entire family. And there was no reason to even exclude the child in this case. It was one child. He was 7 years old. There was nothing in the record that reflected that he was making too much noise or was a disturbance. So not only does the court shut out his family at the critical, this is probably one of the most important moments in this individual's life. He's doing 97 months right now. Not only does he cut out his family where the Constitution says he has a right to have his family, and manipulation is not a substantial reason, Your Honors, and it should be remanded for resentencing. Then this court goes beyond that and prejudices him by engaging in material false fact finding regarding his role in the offense, regarding whether he initiated the drug transaction, because we had this quality about it. And I had put in my papers that there were three other defendants that were involved in a reverse sting drug transaction involving 20 kilos. And the judge said, well, that's very different, Mr. McClain. Those three defendants in that 20-kilo drug transaction, they didn't initiate the transaction. And I said, well, Your Honor, my client didn't initiate the transaction. So what's the material distinction? They were guards at a 20-kilo transaction, and because the police set it up, and those three defendants, Your Honor, at the time of the sentencing, one received, I believe, it's in the record that I've cited to, one received probation, one received 36 months, and the court said, well, didn't that defendant actually, the one with 36 months, actually receive 53 months? I said, no, Your Honor, that was defendant 53. He received 36 months. All right, counsel, we're over. Well, I'd just like to reserve a minute to respond to anything the government says. We'll see what happens. Okay. Thank you, Your Honors. Thank you, Your Honors. Police, the Court, I'm Christopher Brunwyn. I represent the United States in each of these matters. As defense counsel, some of them have referenced, each of these cases arise out of the investigation and prosecution of the Mongols biker gang, which involved charges of federal racketeering, narcotics trafficking, and other federal crimes. The defendants Ramirez and Meltzer were each members of the organization. Defendant Rivera, as his counsel stated, was caught transporting methamphetamine with his brother, who was a Mongols member. Defendant Meltzer was sentenced. His sentence included a period of 137 months incarceration. Defendant Ramirez was sentenced, and his sentence included a period of 108 months incarceration. Defendant Rivera was sentenced. His sentence included a period of 97 months incarceration. I want to ask you about this appellate waiver. So when it's limited to cases in which the sentence, quote, is constitutional, what does that mean? Is it constitutional on its face? Is it constitutional in light of the procedures that led to it? It's a pretty loosely drafted waiver. The defendant would have to identify a constitutional violation, which So each of the defendants here where you've got this waiver issue that says they've identified one, that the sentence was procedurally inappropriate because there was bad fact-finding or because their arguments weren't considered or their arguments weren't addressed and so on. So why doesn't it cover all of those? The appellate waiver does cover those situations. Why doesn't the exception cover those cases? The exception, because the defendants have not identified, certainly Defendant Ramirez has not identified a constitutional violation, and I'll speak to that directly. Defendant Meltzer we can put aside because his sentence is above the guideline range, and therefore that's a different scenario. Defendant Rivera actually purports to identify a constitutional violation, so we address that as having And you don't have any doubt that the constitutional reservation applies at least to that? Yes, Your Honor. We haven't argued that were that to be a constitutional violation, that would be a different scenario. As far as we can decide. Yes, Your Honor. And just a little nuance on that. This is in the agreement, but there is in our case law a very similarly worded general exception, so presumably it doesn't much matter whether it's in the agreement or not in the agreement. I'm sorry. An exception of this worded this way is in our case law as well, separate from the agreement. Yes. So it doesn't matter if it's in the agreement, basically. It doesn't. And one of the things I first want to do, I guess, I suppose in addressing each of the  questions, because what I think is the common theme is it's very important to go back to specifically the record of what actually transpired, because it is the Court's questions I see, especially with regard to Ramirez and each of the defendants, are addressed in what actually transpired for the defendants. The appellate waiver that the Court inquired about with regard to Defendant Ramirez, the specific language and what the Court actually literally said in the record at excerpts of record, page 27, is the Court directed that first discussed the right to appeal a conviction. You have the right to appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there were some other fundamental defect in the proceedings that was not waived by your guilty plea, and then said you also have the right to appeal your sentence under some circumstances, particularly if you believe that your sentence is contrary to the law. However, a defendant may waive those rights as part of a plea agreement, and you have entered into a plea agreement, specifically paragraph 20 thereof, which waives some or all of your rights to appeal the sentence itself. Such waivers are generally enforceable if you believe that the waiver is unenforceable, et cetera, et cetera. And the answer to the Court's question, is that like the language that the Court has previously approved in another case, the answer is yes. It's exactly the same. All right. So let's assume that. So let's go to the constitutional issue. Now, he's – and there are two varieties of constitutional issues here. What I mean by let's go to them, let's see if they're within the appeal waiver. There's two instances in which the defendants are, well, I guess claiming that the – there was essentially a procedural due process problem with the way that the sentence was arrived at, and then there's the – the public trial, which you say isn't a problem. So what's – why aren't the procedural due process claims at least within the appellate waiver? You may say there wasn't a procedural due process problem, but why isn't it within the appellate waiver? Let me first stick with the Ramirez case, because I think hopefully that addresses that, and then – and then I'll go – go from there. But Ramirez hasn't identified a constitutional issue. What he tries to describe as a constitutional or procedural due process is really, when you look at it, it's his objections to basically the rulings of the court not being what he wanted, essentially sentencing factors. And this is addressed in the Bybler case, that – that there is nothing here that goes beyond the statutory maximum sentence. Of course, the stat max in this case is life, but it doesn't rise – it's obviously not an illegal sentence. The issues he purports to identify, he – his – his first issue is he argues that the sentence is improper. That's not a – that's not a constitutional claim, and moreover, he's just legally incorrect on that. And the government has briefed that issue, that the sentencing guidelines address that in racketeering offenses, how you calculate criminal history. The second issue he – he – he tries to claim is that the – he disputes that the government – that the court should have given him a reduction for the time he had served in – in prison on a State sentence. Kagan. But your basic submission is that those are all statutory issues, and you can't turn them into a due process issue by claiming that they're – that it's a denial – due process to deny your statutory rights. I mean, is that basically what you're saying? Yes, Your Honor. All right. So what about in Rivera, where he's saying – just sticking to the procedure, not – not to the – the public trial for a moment, but I would like you to get to that. What about this claim that the – the district judge – there was a due process violation because he was relying on – on just blatantly erroneous facts? Well, moving – moving to the Rivera case, and – and one of the things is that when you look at the Rivera case, it actually – one of the issues that Rivera abandoned in his reply brief was one of the issues that Mr. Ramirez tried to maintain but Rivera's argument as to the – the notion that the court relied on, I believe his statement was factually incorrect statements by the court, materially inaccurate fact-finding. When you look at what he actually says, again, he's – Well, that's not what I'm asking you right now. Oh. I want to know whether we have jurisdiction to – or not jurisdiction, because we've clarified that, but whether we have authority to decide that question, i.e., is it within the constitutional law exception? If he had done that, then there might – if – if the – if that's what the court had done and he had identified something that fell within the category of materially false fact-finding, that would be different. That would be potentially something the court could consider. Identified it where? Identified it in the district court here? Or do I just not clear what you're saying? On appeal. On appeal. Okay. What he's saying he did. I mean, in other words, he states it as an assertion. But you have to look at – again, you have to look at what he said. All right. But you're saying we should address the question on the merits. I mean, we can't decide – the authority question has to be decided by what he raised, not whether he wins or loses. Yes, Your Honor. I agree that in some measure what the bind is, the court has to look at it and say, is there a constitutional issue here in what he's alleging? But when you look at – and I'm saying that substantively when you look at what he says, it's nothing more than a challenge to the reasonableness of his sentence and how his sentence – All right. Why do you think we have to determine that? Because if it were not, it would be constitutional. So in order to determine whether it's constitutional, we have to decide the facts. You – it is – I actually think that what you can see here is not necessarily a factual determination because of the specific things he's saying. When you look at his brief and, for example, he repeatedly in his argument claimed that the court said that he had initiated or instigated the drug transaction. There is no finding in the district court that that occurred. So it's not a factual determination. Was there a constitutional – it doesn't appear in the record. I understand, I believe, from what he's argued here today that he implies that because he compared other sentences that people got and said, well, those people instigated, so why don't I get a sentence? All right. So the way you're looking at it now, I'm just trying to understand the structure here, is we say he claims that the district court acted unconstitutionally by relying on an erroneous finding of fact. We have – we have authority to decide that question because it's a constitutional issue, but he loses. Yes. Because the district court didn't do that. Yes. That's what we're trying to be clear about. Yes. Okay. Yes. All right. What about the public trial issue? The public trial issue here, and again, I think, as I was saying at the outset, why I think it's important to go through and look at what actually happened, because this is not a situation where there is an asserted right to a public proceeding and a defendant is denied that right. Well, why not? The district court said the materials were under seal and I'm also sealing the courtroom at the very beginning. And the defendant's lawyer says, no, no, we want the family here. But I have to back up because it's important to go through what Judge Wright did in this case. And when you look at the actual record of the proceeding and the judge's efforts to listen to what — I'm talking at the very beginning. Isn't that what — was I inaccurate about what happened at the very beginning of the hearing? It wasn't actually the beginning. At the beginning of the August 24th, 2010, proceeding, and the court recognized that I'm looking at page 31 of the excerpts of record and page 4 of the reporter's transcript, and Judge Wright acknowledged that the parties had requested their position papers to be filed under seal and the intention to comply with that request as well as seal the transcript and the courtroom. So already you have a request from the defendant to close the proceedings. No. I'm sorry. Would you please read that to me exactly? Right after that, Mr. McClain says, well, there are family members, so we're asking that they be present. Yes. Yes. As I say, I'm going through this, through exactly what happened. Defense counsel requested to have family members present rather than completely closing the courtroom. So how can you say that he didn't request a public proceeding? He did. Right there. It's he doesn't want the entire, the inferences he wants. So you're saying that since he agreed to have some unrelated members of the public excluded, he's waived his right to have, to object on the judge excluding everybody? I'm saying he doesn't want, he wants a closed proceeding, but he wants family members present. Okay. That's what he's asking. He wants a partially closed. He agrees to, first of all, he didn't say he wanted. What he says is, as I recall, is that the government, first the judge says, the government and defense have requested that their papers be filed under seal, and they will be. The transcript will also be sealed, and as will the courtroom. He doesn't say anybody requested them. There's no evidence they did. Is there? But he, he discusses this with defense counsel at the hearing. And it goes on. What is the relevance of any of this? Because you don't have unlimited time. What's your basic argument for why the judge could exclude the family in the middle of a hearing? One, this is, it is, there is authority that says the exclusion of a child. And when we look at what the judge himself did, not what defense counsel. So it's your argument then that all he excluded was the child and that there's authority for excluding the child. Is that your argument? Well, one, part of the issue is there is authority that says the exclusion of a minor child is a de minimis exclusion. But not in this circuit. It's not this circuit authority. That's correct. I believe it's out of the Sixth Circuit. Yeah. And, and the other. So that's, let's put that aside for a moment. Certainly. All right. Do you, are you contending he can exclude the whole family, the wife as well as the child? I think that would be different because the courts have looked at a scenario and said that, that a minor child, the court in addressing this, I think that would be different. And certainly the precedent. The argument is he did not exclude the wife. The court didn't, didn't say that. And when we look at the actual language of the, that the court used in discussing it with defense counsel, he didn't say. Again, going back to the record of the proceedings, the court inquired, defense counsel, defense counsel advised the district court that he intended to proceed but may ask to address particular matters at sidebar and outside the presence of those family members. That was also at the August 24th proceeding. The court asked, so you don't want even the family members to hear some of this? Yes. And defense counsel responded, no, Your Honor. At that point, the district judge indicated that he would do as defendant wished and would permit discussion at sidebar. Now, when the court got to the point of continuing the proceedings, the court said that he found it distasteful when children are used. He talked specifically about children, not adults, not about family. And that's at pages 56 and 57 of the excerpts of record. In 56, he did talk about the family as a whole. And then he said he was particularly distasteful about young children. But first he said the family as a whole. Right. And defense counsel has argued that this is something that the court is concerned about, efforts to intimidate the court. But I think the inference here is the court is concerned about children being used in the effects. I don't think he was worried about being intimidated. No, I don't think so either. And it's an inference. He's not intimidating the court. He didn't like the idea that they were, he thought, being used because, you know, they might get to him somehow. The idea that the parent was being sentenced. And he didn't want to have that influence on them. The discussion indicates that the concern is that always at every point that children not be used in this way. That's what the court says. I find it particularly distasteful when young children are used. As a matter of fact, I take a very, very dim view of using children in this way. He's not talking about family members. He's talking about children. And that's at the reporter's transcript, 29 through 30, Excerpts of Chapter 56 to 57. Defense counsel responds to this by, not by objecting, but by saying, if I had known the court's feelings and view on this matter, we wouldn't have had the young child here. And that's it. He begins by saying, I want to clear the courtroom. Yes. Right? And then he says, I want to reconvene the sentences just with the adults, without the manipulation. And then he says, Mr. McLean says to him, no family, just my client. He says, forget the manipulation. It doesn't work well with me. Just don't. Just the people involved. And the next time when he comes in, he says, this is the way the courtroom's supposed to look. With nobody in it. But there's no direction, and I think it's important, because the court's language is always directed to a child. And the court never says. Child to a child. Well. Because the person just told you, that he said, just the people involved. Yes, Your Honor. And this is the way a courtroom ought to look, just with the defendant and the lawyer. The court does say, it's defense counsel who says, and no family, just my client. And the court says, forget the manipulation. It doesn't work well with me. And I'm looking at pages 59 and 60 of the transcript. And the court's direction is, just the people involved.  Now, that doesn't say. Just the people involved, pretty clearly, isn't the wife, right? It pretty clearly excludes her, doesn't it? And then when he comes back at the next hearing and says, this is the way the courtroom should look. When the wife's not there, doesn't that pretty clearly indicate that that's what he meant? There's no direction that adults are not present. And my point is going back to this. Wait a minute. I don't understand what you mean by that. There's no direction that adults are not permitted to be present. What does just the people involved mean? Just the people involved. It doesn't seem like it is not necessarily an excluding of all people. Now, if the court, if the argument is that the court excluded all family members, frankly, Your Honor, it's not what it says. And defense counsel didn't. Well, there is some ambiguity if you look through the whole proceeding. But it's pretty clear he didn't, what does it mean when he says, the lawyer says, there's no family, just my client. And the court says, forget the manipulation. Now, what does that mean? It means that he doesn't direct him that he cannot bring family. It sure gave him that impression. And if you wanted to get a decent sentence, you wouldn't have anybody there with that judge. Well, it would have been different if we were in a situation, for example, like the Presley case where defense counsel objected and said, as he claims to have said, I want these people here. Then it would have been clear that the court was ordering people excluded. At the outset of the argument. At the outset of the hearing, quite precisely. I want these people here. That's exactly what he said. I want the family here. At the beginning of the sentencing hearing. That he had brought family members, and then later, as the proceeding went on, and he said, when they talked about the child, if I would have known the court's feelings and views on this matter, we would not have had the young child here. Well, of course, because it was not going to upset the judge. But that doesn't mean the judge had a right to do it. And what he said about the family was. But there's nothing in here. People spend all their time out on the streets, engaged in an awful lot of unsocial activity. Some of it criminal. Then on this day or the sentencing day, then all the family comes rolling in. Family that they should have been spending time with, as opposed to associating with these unsavory characters. I find it particularly distasteful when young children are used. But he found it distasteful as to the whole family. That particularly means it's not the only one he finds distasteful. And I realize I'm coming back to the same point, but we don't have the court. We have a proceeding hearing. Let's suppose we did. Let's suppose we did. First of all, I'd like to know why it's okay to exclude children. I mean, isn't the whole point of the public trial issue that one is supposed to be able to essentially look at the members of the public, relevant and irrelevant, in the eye and understand that what one is doing is having an effect on the world, including on children? And why? And he's saying he's feeling manipulated by that. So why is that okay? The Perry court, in looking at this, talked about the issues that are addressed by the presence of the public. And specifically in talking about an 8-year-old child, the presence of an 8-year-old child being a de minimis exclusion. Well, why is that? We don't need to agree with that. Because the court said that the purpose of a public proceeding is to ensure that the judge and the prosecutor carry out their duties responsibly and to discourage perjury. And the presence of a young child does not necessarily serve that purpose. I'm having trouble seeing why not, since one of the impacts of their ruling is going to be on the young child. It's a — what I interpret from the court's ruling is that the presence of the public is a monitoring. Adults can monitor the courtroom and make sure the proceedings are proceeding fairly. And that's the reason for a public proceeding. That's one reason. Another reason is — That was the reasoning that was — Well, that's their reason. That's the D.C. Circuit. It's not us. Yes. And — but it does make sense that a child is in — a young child is in a lesser position, and certainly the court, the court's concern — Now, it could well be that there would be good reasons to exclude a child, such as that you could see he's getting upset or it's bad for him or he's making noise or whatever. But it didn't say any of those things. He just said he felt manipulated. Well, and I think that the court — the court, in referring to the use of children, that children being used in this manner, feels that the child itself is being manipulated and is concerned about — But he said, I'm being manipulated. And you were trying to, you know, manipulate the jury by making them feel sorry for this man because of a child. But do you think this judge is so easily manipulated that when he sees a child come in, it's going to affect his sentence? No, and I don't think that that's the concern that the judge was addressing. I think when he was referring to the use of the child — In what way? I think he's talking about the effect on a child of being used in a courtroom as a sympathy device and the effect that that could have on a young child. That's what I interpret. That's not what he said. He said he was being, you know, in an effort to manipulate somebody. The court's — the court's words, again, were that I find it particularly distasteful when young children are used. Yeah. And I — But he talks about — It is interpreting the court's words, and I take that to be a concern for — I didn't read anything about — I'm really concerned about this child. And I think for the child's welfare, we should exclude him, assuming that was the judge's right to make that decision. He didn't say that at all. He just said, you know, it's an effort to manipulate me. I see these children paraded through. It certainly — I think in the court talks about manipulation and there's an effort to manipulate the court. But when the court talks about why he would prefer not to have the child there, it — he discusses the child being used. And I think that a reasonable inference is that that is a concern for a child's presence in the courtroom having an effect on that child. Okay. So let's — putting that aside, and assuming that, in fact, he excluded the other members of the family, I don't know whether it was one or more than one person. I gather it was more than one. What about that? I know you don't think so, but let's suppose we do. I don't think so. I suppose we do. Is that a deprivation of the right to a public trial? I think — I think you have to look at the circumstances in this case, which are different, in that the proceedings have already been closed. Papers have been filed under seal. The records — The proceedings were closed by the judge. They were not closed by the parties. They were requested by the defendant. Where are you getting that from? I believe the reference at — in the court transcript at ER 31 is that he acknowledged that the parties had requested position papers to be filed under seal and announced his intention to comply with that request, so that the parties — That's just the filings, position papers. That's not the proceedings. Yes, and then there was the discussion about the presence of family members, and the defense counsel wanted to discuss certain matters outside the presence of the family. So, again, going back to my point that this is — this is a matter that is not starting out from, like the Presley case, where there was voir dire and the court excluded a family member. Do you have any doubt that the public trial right applies to sentencing in general? Yes. You have doubt? Yes, why? Do I have doubting? I'm sorry. If I answered — Does it apply? It does apply to sentencing. Okay. I'm sorry if I answered in the inverse. I understood your question and understood my answer, even if it was not clear. All right. So why — so let's put aside all of your — But — — your — the disagreements about — or the problems about the record. Let's suppose he had said, and no family members. Which he didn't say. I know that. I know that you think that, but let's put it aside. All right? If I could — I'm not trying to — All right. I understand, but I'm trying to get a conceptual answer to the question. If he had said, and no family members, because that makes me feel manipulated too, then what? If he had said, and no family members, which he did not say. And I have to — I have to — I have to, in fairness to Judge — I have to, in fairness to Judge Wright, say that I think the record reflects that he is — he is in a discussion with defense — But that's not the question.  Say it's not someone so sympathetic — With respect — without respect to the identity of the judge making the ruling, he is — appears to be trying to acknowledge the requests of the parties, and in discussion with defense counsel, there's no objection from defense counsel. In fact, defense counsel indicates his dire — Could you just try to answer the question? I will. In the abstract, hypothetically. Hypotheticals are hypothetical. Hypothetical. This is a hypothetical question. Hypothetical. If it had been an open proceeding with no request for any closure, and there had been an order from the court to exclude family members, nothing further, that would be contrary to the Sixth Amendment, consistent with the Presley case. Even if he said it's because I feel manipulated? Even if he said it's because I feel manipulated, I suppose that that probably would not be — it may not be a sufficient basis. I haven't looked at it that way. You asked me in the abstract. I said that would be a violation. But that's not this case. Okay. Thank you, counsel. Thank you. Anybody feel absolutely essential to say something? Yes, Your Honor. Just real brief. I was there. It was clear he excluded the family. That was what he meant. It's in the record. I just asked that you read it. We have the record. Just read the record. It's at the end. I say to him, no family, Your Honor. He says, no family. We've read that. We've even read it here. Now, as far as what — even under a partial closure, Your Honors, Sherlock talks about partial closure. There still has to be a substantial reason. A court, not in front of a jury, is not a substantial reason I feel manipulated, which is what he said. Not a substantial reason. I'm beginning to feel manipulated. The Perry — Last thing. Last thing I'll say about that is the Perry case. The Perry case is a Sixth Circuit case. They exclude the child. The mother was still allowed to be in there. Didn't exclude the whole family. And it was manipulation because of a jury. Totally different than the sentence. Thank you very much. Thank you, Your Honor. Sixth Circuit will be submitted. Court will stand adjourned for the day.
judges: Kennelly, Reinhardt, Berzon